IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| 360 Painting, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>R. Sterling Enterprises, Inc. and Robert Sterling,<br><br>    Defendants. | Case No. 20 C 4919<br><br>Hon. LaShonda A. Hunt |

**MEMORANDUM OPINION AND ORDER**

This dispute arises from a franchise agreement between Plaintiff 360 Painting, LLC ("Plaintiff") and Defendants R. Sterling Enterprises, Inc. ("RSE") and Robert Sterling ("Sterling"), (collectively, "Defendants"). Plaintiff terminated the agreement and sued Defendants for breach of contract by RSE (Count I), breach of guaranty by Sterling (Count II), and other tortious misconduct [27]. In response to Plaintiff's First Amended Complaint ("FAC"), Defendants asserted multiple affirmative defenses [31] and subsequently filed counterclaims against Plaintiff [60]. Only RSE's breach of contract counterclaim remains operative [81]. Currently before the Court is Plaintiff's motion for partial summary judgment as to Counts I and II of the FAC and Defendants' third affirmative defense of false inducement, and Defendants' cross-motion for partial summary judgment as to Counts I and II of the FAC. For the reasons discussed below, Plaintiff's motion [91] is granted in part and denied in part, and Defendants' motion [96] is denied.

**BACKGROUND**

The material facts are taken from the parties' Local Rule 56.1 statements. In April 2018, Plaintiff, as franchisor, and RSE, as franchisee, executed a franchise agreement and addendum,

1

and Sterling executed a personal guaranty of RSE's payment and performance. (Pl. Rule 56.1 Statement at Ex. 1, Dkt. #93-1). Under the franchise agreement, for a ten-year term, RSE agreed to pay a certain percentage of its gross sales, as defined by the agreement, to Plaintiff. Specifically, Section 4 required RSE to pay 6% of its gross sales to Plaintiff for royalties (or, at a minimum, $100 per week), 2% of its gross sales to a marketing fund, and 1% of its gross sales to a call center/technology fund (or, at a minimum, $100 per week, and at a maximum, $200 per week). RSE was required to report its gross sales to Plaintiff monthly in an accurate and timely fashion. The agreement also provided for payment of audit and attorneys' fees in Sections 6 and 31, respectively, under certain circumstances.

Sections 22 and 23 of the franchise agreement addressed obligations upon termination of the parties' relationship. Pertinent here is Section 23.2(iii), which states:

> Upon the expiration or termination of this Agreement, whether by reason of lapse of time, default in performance or other cause or contingency, Franchisee shall . . . pay all sums owing to Franchisor which may include, but not be limited to, all damages, costs and expenses, including reasonable attorneys' fees, unpaid Royalty Fees, and any other amounts due to Franchisor[.]

(Dkt. #93-1, at 36). Furthermore, the first paragraph of the addendum[1] provides as follows:

> Under Section 23, EFFECT AND OBLIGATIONS UPON TERMINATION, SECTION 23.1 of the Agreement shall be deleted in its entirety and of no force or effect. Also waive any obligation to pay unpaid and/or future royalty fees, national marketing fund contribution and/or other fees owed post-termination in Sections 22.1(ii) and 23(iii).[2]

---

[1] Although the document titled Addendum to Franchise Disclosure Document contains two paragraphs, it is undisputed that only paragraph 1 is relevant to the analysis here.

[2] The reference to Section 23(iii) is unclear, as no such section exists in the franchise agreement. Rather, it appears that the applicable provision would be Section 23.2(iii), which is set forth *supra*. Thus, the Court assumes that references to Section 23 (iii) in the addendum and the parties' briefs refer to Section 23.2(iii). (*See* Pl. Resp. at 2, n.1, Dkt. #99). In addition, Section 22.1(ii) of the franchise agreement addresses situations where franchisee terminates the agreement. Because it is undisputed that franchisor Plaintiff terminated the agreement with franchisee RSE, Section 22.1(ii) does not apply.

(Dkt. #93-1 at C-6). Plaintiff drafted both the franchise agreement and the addendum. However, Plaintiff states the addendum was specifically requested by Defendants.

RSE began operating the franchise in June 2018. Four months later, in October 2018, Paul Flick ("Flick"), CEO of Plaintiff's parent company, contacted Sterling about a discrepancy between the amount of materials RSE was purchasing for projects and its reported sales data. Flick questioned if Defendants were underreporting gross sales and asked Sterling to self-audit RSE's bank statements. Sterling complied and confirmed that RSE had in fact underreported gross sales. Less than a year later, in August 2019, Sterling was contacted by a different employee of Plaintiff's parent company for another audit. While the parties dispute whether Sterling produced all the documentation requested for that audit, they do agree that, throughout the course of the term of the franchise agreement, Defendants failed to accurately report gross sales on numerous occasions. Believing that this intentional underreporting of gross sales caused an underpayment of royalty and other fees, Plaintiff terminated the franchise agreement in November 2019.

In 2020, pursuant to an agreement with the Illinois Attorney General's Office, Plaintiff was required to offer rescission to certain franchisees—including RSE—for failure to include an Illinois-specific amendment to their franchise agreements. However, the rescission offer expressly stated that it did not waive the responsibilities either party had to each other under the franchise agreement during the time period when the agreement was in effect. RSE accepted the rescission offer in June 2020, and a month later, Plaintiff filed suit against Defendants seeking, among other things, unpaid fees accrued during the franchise term from RSE, and enforcement of the guaranty agreement against Sterling.

## **LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where . . . the movant is seeking summary judgment on a claim as to which it bears the burden of proof, it must lay out the elements of the claim, cite the facts which it believes satisfy these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim. . . . If the movant has failed to make this initial showing, the court is obligated to deny the motion." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015). The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial," *Celotex*, 477 U.S. at 324, and support their position with "more than a scintilla of evidence." *Conley v. Vill. of Bedford Park*, 215 F.3d 703, 709 (7th Cir. 2000). All "justifiable" inferences are drawn in favor of the non-moving party. *Anderson*, 477 U.S. at 155; *see also Runkel v. City of Springfield*, 51 F.4th 736, 741 (7th Cir. 2022) (non-moving party receives "benefit of conflicting evidence" as well as "any favorable inferences that might be reasonably drawn from the evidence."). Additionally, a court must refrain from weighing evidence or making credibility determinations. *Johnson v. Advocate Health & Hosps., Corp.*, 892 F.3d 887, 893 (7th Cir. 2018).

## **DISCUSSION**

Under Illinois law, damages are an essential element of a breach of contract claim. *See Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007). In their cross-motions for partial summary judgment on Counts I and II of the FAC, the parties dispute whether any damages are recoverable under Section 23.2(iii) of the franchise agreement in light of

4

paragraph 1 of the addendum.[3] Defendants argue that the addendum relieves RSE (and by extension, Sterling, as guarantor of payment) of any obligation to pay certain fees upon termination of the franchise relationship. Plaintiff disagrees. At issue here is a question of contract interpretation, which typically can be decided on summary judgment. However, upon review of the arguments and the relevant contract documents, the Court finds that the contract is ambiguous and therefore inappropriate for resolution on summary judgment.

When interpreting a contract, a court must first determine whether a contract is ambiguous, which is a question of law. *Cent. States, Se. and Sw. Area Pension Fund v. Waste Mgmt. of Mich., Inc.*, 674 F.3d 630, 634-35 (7th Cir. 2012). If the contract is not ambiguous, a court will interpret it by looking within the four corners of the document only. *Id.* at 634. On the other hand, if a contract is ambiguous, meaning that it is subject to more than one reasonable interpretation, the next question is whether the ambiguity can be resolved as a matter of law. *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036-37 (7th Cir. 1998). That analysis can involve "appealing to 'knowledge of those facts which give it meaning as gleaned from the general language of the contract,'" along with considering parol evidence and canons of contractual interpretation. *Id.* (quoting *Flora Bank & Trust v. Czyzewski*, 222 Ill. App. 3d 382, 388 (5th Dist. 1991)). If, after engaging in this process, ambiguity remains, "the door would be open to extrinsic evidence to be evaluated by a finder of fact." *Bourke*, 159 F.3d at 1037.

Both parties argue that the language of the agreement and addendum are unambiguous. The Court disagrees. Each party has offered a reasonable interpretation of the contract, rendering the contract ambiguous.

---

[3] Plaintiff also moved for summary judgment on Defendants' third affirmative defense of false inducement. Because Defendants are not contesting dismissal of that affirmative defense, Defs. Resp. at n.1, Dkt. #102, summary judgment is granted in favor of Plaintiff on the affirmative defense of false inducement.

Plaintiff contends that Defendants breached the franchise agreement and personal guaranty because they failed to pay certain royalties, damages, interest, costs, attorneys' fees, and audit costs in accordance with the contract, and the addendum does not waive that obligation. Specifically, Plaintiff argues that "the addendum's plain language makes clear" that "it did not waive damages for misrepresentations uncovered in an audit under Section 6.4 [of the franchise agreement], or the costs and fees owed for such breach under Section 31 [of the franchise agreement], or Mr. Sterling's personal guaranty." (Pl. Mem. at 8, n.4, Dkt. #92). Plaintiff maintains that the addendum expressly waives only a subset of obligations in Section 23.2(iii) and does not even mention pre-termination damages under Sections 4, 6, and 31. Rather, the addendum waives payment of specific fees that could arise *after* termination, such as future royalties, which Plaintiff is not seeking in this case. Further, Plaintiff asserts a waiver of all payment obligations under the agreement upon termination would violate public policy and Defendants' reading of the agreement invites absurdity.

The Court finds that to be a reasonable interpretation of the language. The first paragraph of the addendum states, in part: "Also waive any obligation to pay unpaid and/or future royalty fees, national marketing fund contribution and/or other fees owed post-termination in Section[] 23 (iii)." It is reasonable to read "post-termination" as modifying the explicitly identified fees coming before it, thus waiving *only* those fees accruing after termination. In addition, Section 23.2(iii) provides that upon termination, a franchisee shall "pay all sums owing to Franchisor which may include, but not be limited to, all damages, costs and expenses, including reasonable attorneys' fees, unpaid Royalty Fees, and any other amounts due to Franchisor[.]" As a result, the addendum may reasonably be read to waive the specific fees it identifies, but not *all sums* that would be due

6

to the Franchisor upon termination. Finally, Plaintiff is correct that the addendum references only Section 23.2(iii), supporting its position that damages arising from Sections 4, 6, and/or 31 were intended to remain untouched.

Defendants contend that the addendum language waives any right Plaintiff had to collect fees that had accrued prior to termination of the franchise agreement. They point to the catch-all language, "and/or other fees." Under their reading, they argue that Plaintiff waived its right to any fees post-termination. Additionally, Defendants reason that the language "and any other amounts due to Franchisor" in Section 23.2(iii) further bolsters their interpretation that all fees, including audit and attorneys' fees, were waived. On top of that, Defendants highlight the word "unpaid" in the addendum, reasoning that "[i]f the addendum only released future royalty fees as Plaintiff suggests, there would be no reason to include the word 'unpaid' in this provision." (Def. Reply at 3, Dkt. #108). Finally, Defendants argue that the addendum, waiving all fees due upon termination, does not violate public policy because it is not a general release of all future claims, but rather a release of a certain type of damages Plaintiff could collect. Nor does its reading produce an absurd result; the parties contracted to limit the type of damages available. As such, Defendants assert that Counts I and II must fail because an essential element of a breach claim—damages—cannot be established.

The Court finds that Defendants' interpretation is also reasonable. One may reasonably read "owed post-termination" in the addendum as modifying only the phrase immediately before it—other fees— thus opening the door to the waiver of any pre-termination fees. Alternatively, one could read "owed post-termination" to mean that any fees RSE owed pursuant to Section 23.2(iii) (which does include reasonable attorneys' fees and "any other amounts due to Franchisor") after the agreement was terminated, regardless of whether those fees accrued prior to or after the

7

termination, were waived. Defendants also make a valid argument that use of the word "unpaid" in the addendum at least suggests an intention that fees owed prior to the termination be waived.

With two competing, reasonable interpretations of the agreement and addendum, the Court next determines whether the ambiguity may be resolved by the facts gleaned from the contractual language and through canons of interpretation. The Court first looks at the contract as a whole; the text at issue cannot be analyzed in isolation. *Bourke*, 159 F.3d at 1038. But doing so here does not resolve the ambiguity. For example, Sections 6 and 31, which address audit fees and attorneys' fees, respectively, provide that the duty to pay such fees or costs withstands termination of the agreement. However, the agreement does not provide guidance on how to interpret these provisions in light of the addendum. Additionally, although the parties entered into a rescission agreement in 2020, it is undisputed that the rescission agreement does not have any effect on the present dispute. (*See* Pl. Mem. at 9, n.5; Def. Resp. at 2).

Contractual language is generally construed against the drafter. *Bourke*, 159 F.3d at 1036 (citation omitted). But while Plaintiff drafted both the agreement and addendum, Section 28 of the agreement states, in part, that "[f]ranchisee waives to the fullest extent possible the application of any rule which would construe ambiguous language against Franchisor as the drafter of this Agreement." (Dkt. 93-1, at 39).

Finally, reference to the purpose of the contract can be helpful. *Bourke*, 159 F.3d at 1039. "[I]f the principal purpose of the parties is ascertainable it is given great weight." *Id.* (citing Restatement (Second) of Contracts § 202(1)). While the purpose of neither the agreement nor addendum is explicitly stated, Plaintiff urges the Court to rely upon Sterling's testimony that he did not want to be responsible for continuing to pay fees if the agreement was terminated before the expiration of its ten-year term. And Plaintiff points to the fact that, in 2023, Sterling produced

a court-ordered financial report "in which he acknowledged that defendants were not disputing that unpaid royalties should still be paid as provided in the Franchise Agreement." (Pl. Resp. at 3). In their response, though, Defendants highlight Sterling's deposition testimony on cross-examination, explaining that he was concerned with the payment of all unpaid royalties, regardless of when they accrued. (Defs. Reply at 3-4). Such a key factual dispute should not be resolved on competing summary judgment motions.

Finally, it is well-established that contracts should not be read in a manner that would produce absurd results. *Beanstalk Grp., Inc. v. AM Gen. Corp.*, 283 F.3d 856, 860 (7th Cir. 2002) ("[A] contract will not be interpreted literally if doing so would produce absurd results, in the sense of results that the parties, presumed to be rational persons pursing rational ends, are very unlikely to have agreed to seek."). Although both sides argue that the other's reading of the agreement and addendum would result in absurdity, the Court disagrees. On one hand, it is not absurd to read the contract in such a way that preserves the payment of certain fees post-termination. Indeed, absent monetary awards, Section 23 provides for certain injunctive relief only. On the other hand, it is not absurd to think that parties may contractually agree that, in the event of a breach, the only remedy available to a wronged party is injunctive relief. In other words, two things can be true at the same time—either reading is plausible.

In sum, the Court concludes that enough ambiguity exists with respect to the contractual language that the finder of fact will need to evaluate extrinsic evidence to determine liability during a trial. *See Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 270 F.3d 1117, 1127 (7th Cir. 2001) (finding that because reasonable people could come to different conclusions about the agreement's meaning and the consideration of extrinsic evidence would be appropriate, a genuine issue of material fact existed and precluded summary judgment).

9

## CONCLUSION

For all the foregoing reasons, Plaintiff's motion for partial summary judgment is granted as to Defendants' affirmative defense of fraudulent inducement, and both Plaintiff's motion for partial summary judgment and Defendants' motion for partial summary judgment as to Counts I and II of Plaintiff's First Amended Complaint are denied.

**DATED**: May 10, 2024　　　　　　　　　　**ENTERED**:

_LaShonda A. Hunt_
LASHONDA A. HUNT
United States District Judge